FILED

2013 JUN 12  PM 12: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1  Daniel Alberstone (SBN 105275)
   dalberstone@baronbudd.com
2  Roland Tellis (SBN 186269)
   rtellis@baronbudd.com
3  Peter F. Smith (SBN 203224)
   psmith@baronbudd.com
4  Mark Pifko (SBN 228412)
   mpifko@baronbudd.com
5  BARON & BUDD, P.C.
6  15910 Ventura Blvd., Suite 1600
   Encino, California 91436
7  Telephone: (818) 839-2333
   Facsimile: (818) 986-9698
8
9  Attorneys for Plaintiff,
   RUSSELL MINORU ONO, individually
10 and on behalf of other members of the
   general public similarly situated
11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15 RUSSELL MINORU ONO,              Case No.: CV13-04222 -PA
   individually and on behalf of other                    (AGRx)
16 members of the general public
   similarly situated,               CLASS ACTION COMPLAINT FOR:
17                                    (1)  Violation of the Consumers Legal
            Plaintiffs,                   Remedies Act (Cal. Civ. Code
18                                        §§ 1750 *et seq.*);
19       vs.                         (2)  Violation of Unfair Competition
                                         Law (Cal. Bus. & Prof. Code
20 HEAD RACQUET SPORTS USA, a            §§ 17200 *et seq.*);
   corporation organized and existing
21 under the laws of the State of     (3)  Violation of False Advertising Law
   Delaware,                             (Cal. Bus. & Prof. Code §§ 17500
22                                        *et seq.*);
            Defendant.
23                                   (4)  Fraud;
24                                   (5)  Negligent Misrepresentation;
25                                   (6)  Breach of Express Warranty; and
                                     (7)  Unjust Enrichment
26                                   JURY TRIAL DEMANDED
27

28

Plaintiff Russell Minoru Ono ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, alleges as follows:

## NATURE OF THE ACTION

1.   This action is brought on behalf of Plaintiff and a class of consumers who purchased certain models of Head tennis rackets that have been purportedly endorsed and used in competition by certain famous top-ranked tennis players in the world, including Andy Murray (the "Endorsed Tennis Rackets"). Plaintiff and the class members purchased Endorsed Tennis Rackets because they were deceived by Defendant Head Racquet Sports USA ("Defendant" or "Head") into believing that top-ranked professional tennis players actually used Endorsed Tennis Rackets during competition. Through its deceptive and misleading practices, Defendant has harmed Plaintiff and the members of the class. Plaintiff brings this action on behalf of himself and other similarly situated consumers nationwide and in the State of California to prevent Head from continuing to mislead consumers, and to obtain redress for those who have purchased Endorsed Tennis Rackets.

2.   This case concerns the false and misleading practices engaged in by Head in connection with the company's advertising and marketing of its tennis rackets. To increase sales of its new rackets each year, Head deceived the general public and consumers of tennis rackets into believing that top-ranked professional players uses the newest model Head rackets — i.e., the Endorsed Tennis Rackets. In reality, the professional tennis players do not use the Endorsed Tennis Rackets; they continue to play with custom-made rackets not available to the general public or with older model tennis rackets that have either been discontinued by the manufacturer or can be purchased at deep discounts.

3.   To deceive consumers into purchasing the new, more expensive Endorsed Tennis Rackets, Head has entered into an endorsement deals with certain professional tennis players, such as Andy Murray, Novak Djokavic and Maria Sharapova, through which Head provides the professional tennis players with their preferred custom-made

or older-model rackets, which have been painted to look like Head's latest Endorsed Tennis Rackets. This occurs year-after-year. Accordingly, when people see the top professional tennis players play — in person, on television, or in photographs — they see them using custom-made or older-model rackets that are disguised to look like the latest Endorsed Tennis Rackets. In addition, as part of its deceptive scheme, Head expressly represents to consumers in its press releases and other marketing materials that these top ranked professional tennis players use the latest Endorsed Tennis Rackets. As a result, consumers are deceived into believing that these top ranked professional players are using the latest Endorsed Tennis Rackets during competitive play.

4.     The belief that professional tennis players are using the latest racket models leads consumers to purchase those rackets, which, in some cases, are considerably more expensive than the rackets that these professional tennis players actually use, and more expensive than rackets made by Head's competitors. The belief that professional tennis players are playing with the latest model racket also creates demand for Head's latest rackets because it makes consumers believe that they need to replace their current rackets if they want to play at their best. Head thus preys upon consumers who are anxious to play with the actual tennis rackets used by top professional tennis players, such as Andy Murray, Novak Djokavic and Maria Sharapova and who believe that their game will improve by using the racket that top professionals use during competition.

## JURISDICTION

5.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendant. Further, greater than two-thirds of members of the Class reside in states other than the states in which Defendant is a citizen. In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state-law claims because all of the claims are derived from a common nucleus of

operative facts and are such that plaintiffs ordinarily would expect to try them in one judicial proceeding.

6. Venue lies within this judicial district under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant's contacts are sufficient to subject it to personal jurisdiction in this District and, therefore, Defendant resides in this District for purposes of venue.

7. Additionally, venue lies within this judicial district under § 1391(b)(2) because certain acts giving rise to the claims at issue in this Complaint occurred, among places, in this District.

**PARTIES**

8. Plaintiff Russell Minoru Ono is an individual and a citizen of California.

9. Defendant Head Racquet Sports is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 306 S. 45th Avenue, Phoenix, Arizona 85043.

10. Defendant Head Racquet Sports is authorized to do and, in fact, is doing business in the State of California, because, among other things, its products are offered for sale through retail stores in California and via the Internet, accessible to consumers in California.

11. Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant.

**FACTUAL BACKGROUND**

12. Defendant touts itself as a leading global manufacturer and marketer of sports equipment, including tennis racquets. At the beginning of this year, Defendant announced that it had posted the best ever sales results for a full year in the company's

CLASS ACTION COMPLAINT

1  history and expressly stated that its sales results were, due in large part to the "incredible

2  results from our athletes like Novak Djokovic, Maria Sharapova and Andy Murray."

3      13.    To enhance its global image and brand, Defendant has developed

4  relationships with a stable of professional tennis players it pays to endorse its product

5  line of tennis rackets.  At the top of this list of professional athletes are, on the men's

6  side, World No. 1 Novak Djokovic and World No. 2 Andy Murray, and, on the women's

7  side, World No. 2, Maria Sharapova.

8      14.    Head has announced that its "new marketing campaigns have been player

9  centric and have focused on digital and social media marketing tactics.  Some of the

10  world's best tennis athletes have helped take HEAD to the next level," that "HEAD was

11  able to combine players and marketing to maximize the impact," and that "'While it's

12  great to share fantastic 2012 results, we are poised for further growth in 2013 with

13  aggressive marketing around Novak and Maria throughout the first half.  With the #1

14  male player in the world in Novak and Maria as the most marketable female player in

15  the world we are positioned for another great year,' said [Greg] Mason [Vice President

16  Sales and Marketing Racquet Sports US]."

17      15.    Defendant has earned handsome profits through its relationship with these

18  and other top ranked professional athletes by misleading the public with false claims

19  concerning the actual tennis rackets they have played with during competition.

20  Although the professional tennis players have endorsed the latest models of tennis

21  rackets purportedly available to the general public, they are not willing to part with their

22  most prized piece of equipment on the court — their own tennis rackets.  Unfortunately,

23  however, consumers have been deceived by this practice by statements such as:

24      Murray was winning a thrilling match with his HEAD YouTek IG Radical,

25      saving a match point in the 12th game of the final set for a 2-6, 6-4, 7-6 (1)

26      defeat of Spain's David Ferrer . . . Richard Gasquet, playing with his HEAD

27      YouTek IG Extreme, was beaten in a three set battle 7-6(3), 1-6, 2-6 by the

28      later winner Andy Murray.  In the second semifinal HEAD Racquet Rebel

4

Tommy Haas (HEAD YouTek IG Prestiege) was defeated 6-4, 2-6, 3-6 by the finalist David Ferrer….In the women's draw, Maria Sharapova, who swings her new HEAD YouTek Graphene Instinct, reached the final just two weeks after her triumph in Indian Wells. [April 2, 2013]

Playing with his new YouTek Graphene Speed Novak Djokovic continues to dominate on the ATP World Tour this season.  With a 7-5, 6-3 defeat over fellow HEAD Racquet Rebel Tomas Berdych, who serves with the new YouTek Graphene Instinct, the World No. 1 captured his fourth Dubai Duty Free Championships title within five years. [March 4, 2013]

16.    Upon information and belief, Head's claims concerning the tennis racket used by professional tennis players are false, deceptive, and misleading, and such claims have induced and continue to induce consumers to spend money on the latest Endorsed Tennis Rackets that are, in fact, not used by professional tennis players who endorse them.  Head's deceptive and misleading conduct has caused consumers to purchase the latest Endorsed Tennis Rackets specifically because they have been led to believe that top ranked professional tennis players use those tennis rackets.  Thus, Head has engorged itself with profits based upon its false and deceptive practices to the detriment of consumers.

17.    Head spends millions of dollars misleading consumers that professional tennis players use certain models of tennis rackets that Head manufactures and markets.  However, the truth is that professional tennis players whom Head pays to endorse specific models actually play with custom-made rackets that are not available to the general public or with older models that have been discontinued or are sold at steep discounts.  To deceive the public, however, the rackets that Head provides these professional tennis players have been painted to look like the latest models Head sells to the general public-i.e., the Endorsed Tennis Rackets, to the detriment of consumers.

18.    Head takes advantage of every marketing avenue the modern age has opened to it, as well as relying on tried-and- true methods, in order to ensure that its false and deceptive marketing message permeates the general consumer consciousness. Head uses television and print advertising, internet marketing, social media, and on-court use of these paintjob tennis rackets.  No matter which marketing avenue reaches a consumer, Head drives home the same false and deceptive claims that professional tennis players with whom Head has endorsement deals play with the Endorsed Tennis Rackets, which are always Head's latest models.

19.    As a result of the foregoing, Head's claims regarding the latest Endorsed Tennis Rackets are deceptive and misleading.  Had Plaintiff and other members of the proposed Class been aware of the truth, they would not have purchased the latest Endorsed Tennis Rackets purportedly used by professional tennis players, or would not have paid a premium price for the products.

20.    Indeed, Head was in a superior position to know and did know that its claims and advertisements were deceptive and false, and it failed to inform consumers that the latest Endorsed Tennis Rackets that top professional tennis players have been paid to endorse and have been purportedly using were not, in fact, used by those top professional tennis players in competitive play.

21.    Instead, Head allows its deceptive and misleading marketing to permeate the consumer advertising consciousness and perpetuate Head's false claims and promises.

22.    Because of such deceptive practices and conduct, Head is able to charge and get a substantial premium for the latest Endorsed Tennis Rackets each year over readily available and much lower priced tennis rackets.  Thus, Head reaps profits on products where consumers are induced to pay for a product that they would not otherwise purchase or pay an unwarranted, substantial premium.

## PLAINTIFF ONO'S CLAIMS AGAINST HEAD

23.     Plaintiff is a resident of Thousand Oaks, California, in Ventura County, California.

24.     In 2012, Plaintiff purchased Head's YouTek IG Radical racket.  This tennis racket model has been endorsed by Andy Murray, and Defendant has represented that Andy Murray has used this tennis racket model in competitive play.

25.     In deciding to purchase Head's YouTek IG Radical racket, Plaintiff saw and relied on the express and implied statements made by Head, believing Head's claims that professional tennis players, like Andy Murray, actually used the same model tennis rackets  that they were paid to endorse.  These representations were material to Plaintiff.

26.     Plaintiff was denied the benefit of the bargain when he decided to purchase the latest Head tennis racket purportedly used by a top professional tennis player over competitor products and other Head products that sold at a lower price, because he paid for a product that was not used in competition by Andy Murray, as he was led to believe by head.  Accordingly, Plaintiff suffered injury in fact and lost money as a result of Head's false and misleading representations.

27.     Had Head disclosed to Plaintiff and members of the Class the truth concerning the actual tennis racket models that professional tennis players used in competition, they would have seen and been aware of the disclosure.  But for Head's misrepresentations, Plaintiff and members of the Class would not have purchased the latest Endorsed Tennis Rackets.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action on behalf of himself and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff is informed and believes and on that basis, alleges that Wilson has sold thousands of units of Endorsed Tennis Rackets, if not more, in California and

throughout the United States.  Plaintiff is informed and believes and, on that basis, alleges that the representations made by Head for Endorsed Tennis Rackets have been uniform throughout the class period.

29.     The groups of similarly situated individuals Plaintiff seeks to represent (the "Class") are defined as follows:

> All residents of California who purchased Endorsed Tennis Rackets during the period of January 1, 2006, continuing through the date of final disposition of this action (the "California Statutory Subclass").

> All residents of the United States of America who purchased Endorsed Tennis Rackets during the period of January 1, 2006, continuing through the date of final disposition of this action (the "Nationwide Subclass").

30.     Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

31.     Plaintiff reserves the right to establish additional sub-classes as appropriate.

32.     This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof.  As used herein, the term "Class Members" shall mean and refer to the members of the Class.

33.     **Numerosity:**  While the exact number of members of the Class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendant.  At this time, Plaintiff is informed and believes that the Class includes thousands of members.  Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

34.   **Ascertainability:**  Names and addresses of members of the Class are available from Defendant's records.  Notice can be provided to the members of the Class through direct mailing, publications, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and federal law.

35.   **Typicality:**  Plaintiff's claims are typical of the claims of the other members of the Class which he seeks to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiff and each member of the Class have been subjected to the same deceptive and improper practices and have been damaged in the same manner thereby.

36.   **Adequacy:**  Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure 23(a)(4).  Plaintiff is an adequate representative of the Class because he has no interests which are adverse to the interests of the members of the Class.  Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

37.   **Superiority:**  A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)   The expense and burden of individual litigation make it economically unfeasible for members of the Class to seek to redress their "negative value" claims other than through the procedure of a class action.

(b)   If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members to seek to redress their "negative value" claims other than through the procedure of a class action; and

(c)   Absent a class action, Head likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

9

38.    Common questions of law and fact exist as to members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

39.    The common questions of fact include, but are not limited to, the following:

(a)    Whether Defendant's practice of misleading consumers who purchase Endorsed Tennis Rackets violates one or more provisions of the Consumer Legal Remedies Act, California Civil Code sections 1750 *et seq.*;

(b)    Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

(c)    Whether Defendant engaged in consumer fraud, deceptive trade practices, or other unlawful acts;

(d)    Whether Plaintiff and members of the Class justifiably relied on the representations Defendant made in connection with its sale of Endorsed Tennis Rackets;

(e)    Whether Defendant's conduct was willful or reckless;

(f)    Whether Plaintiff and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit; and

(g)    Whether Defendant engaged in unlawful and unfair business practices in violation of California Business and Professions Code sections 17200 *et seq.* and 17500 *et seq.*

40.     In the alternative, this action is certifiable under the provisions of Federal Rule(s) of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

    (a)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant;

    (b)     The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests, and;

    (c)     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

41.     Plaintiff is not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

42.     This case concerns fraudulent practices committed by Defendant in connection with the sale of tennis rackets to the general public.

**FIRST CAUSE OF ACTION**
***Brought on Behalf of the California Statutory Subclass***
**Violation of the California Consumers Legal Remedies Act**
**(California Civil Code §§ 1750 *et seq.*)**

43.     Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

44.     Plaintiff brings this cause of action on behalf of himself and the other members of the California Statutory Subclass.

11

45.     This cause of action is brought under the California Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CRLA").  Plaintiff and members of the California Statutory Subclass are consumers as defined by California Civil Code section 1761(d).  The Endorsed Tennis Rackets are goods within the meaning of California Civil Code section 1761(a).

46.     Defendant violated and continues to violate the CRLA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and members of the California Statutory Subclass, which were intended to result in, and did result in, the sale of Endorsed Tennis Rackets:

(5)     Representing that [Endorsed Tennis Rackets have] characteristics . . . which they do not have.

(7)     Representing that [Endorsed Tennis Rackets] are of a particular standard, quality, or grade, or . . . of a particular style or model.

(9)     Advertising goods . . . with intent not to sell them as advertised.

47.     Defendant violated the CRLA by misrepresenting and advertising Endorsed Tennis Rackets, as discussed above.  However, Defendant knew, or should have known, that these representations were false and misleading.

48.     In order to conceal the fact that its claims that top professional tennis players such as Andy Murray play with Endorsed Tennis Rackets are untrue, Defendant painted the Endorsed Tennis Rackets to disguise the outdated or unavailable rackets the top professional tennis players were actually playing with in order to make them look like the newer or otherwise available models that they are paid by Defendant to endorse.

49.     Under Section 1782 of the CLRA, by letter dated April 9, 2013, Plaintiff notified Defendant in writing of the particular violations of Section 1770 of the CLRA and demanded that Defendant rectify the problems associated with the behavior detailed above, which acts and practices are in violation of California Code section 1770.

50.   Defendant failed to respond adequately to Plaintiff's above-described demand within thirty days of Plaintiff's notice.  Accordingly, Plaintiff requests damages and other relief permitted by California Civil Code section 1780.

51.   Plaintiff will file a Declaration of Venue in accordance with Civil Code section 1780(d).

52.   Under Section 1782(d) of the CLRA, Plaintiff seeks an order enjoining the acts and practices described above, restitution of property, and any other relief that the court deems proper.

53.   Defendant's conduct is malicious, fraudulent, and wanton, and Defendant intentionally misleads and withholds material information from consumers in order to increase the sale of the Endorsed Tennis Rackets.

54.   Defendant's misrepresentations and omissions were material to Plaintiff and members of the California Statutory Subclass.  Plaintiff and members of the California Statutory Subclass would not have purchased and consumed the Federer Tennis Rackets had it not been for Defendant's misrepresentations and concealments of material facts.  Plaintiff and members of the California Statutory Subclass were damaged as a result of Defendant's material misrepresentations and omissions.

## SECOND CAUSE OF ACTION
### *Brought on Behalf of the California Statutory Subclass*
### Violation of the California Unfair Business Practices Act
### (California Business & Professions Code §§ 17200 *et seq.*)

55.   Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

56.   Plaintiff brings this cause of action on behalf of himself and the other members of the California Statutory Subclass.

57.   California Business and Professions Code section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice."  For the reasons described

1  above, Defendant has engaged in unlawful, unfair, and/or fraudulent business acts or

2  practices in violation of California Business and Professions Code section 17200.

3       58.   Defendant's misrepresentations and omissions of material facts, as set forth

4  herein, constitute an unlawful practice because they violate California Civil Code

5  sections 1572, 1573, 1709, 1710, 1711, and 1770, and the common law.

6       59.   Defendant's misrepresentations and omissions of material facts, as set forth

7  herein, also constitute "unfair" business acts and practices within the meaning of

8  California Business and Professions Code section 17200 *et seq.,* in that Defendant's

9  conduct was injurious to consumers, offended public policy, and was unethical and

10  unscrupulous.  Plaintiff also asserts a violation of public policy by withholding material

11  facts from consumers.  Defendant's violation of California's consumer protection and

12  unfair competition laws in California resulted in harm to consumers.

13       60.   There were reasonable alternatives available to Defendant to further

14  Defendant's legitimate business interests, other than the conduct described herein.

15       61.   California Business and Professions Code section 17200 also prohibits any

16  "fraudulent business act or practice."

17       62.   Defendant's misrepresentations and concealment of material facts, as set

18  forth above, were false, misleading, and/or likely to deceive the public within the

19  meaning of California Business and Professions Code section 17200.

20       63.   Defendant's misrepresentations and concealment were made with

21  knowledge of their effect, and were done to induce Plaintiff and members of the

22  California Statutory Subclass to purchase Head's Endorsed Tennis Rackets.  Plaintiff

23  and members of the California Statutory Subclass saw and justifiably relied on

24  Defendant's misrepresentations when purchasing Head's Endorsed Tennis Rackets.

25       64.   Defendant's conduct caused and continues to cause injury to Plaintiff and

26  members of the California Statutory Subclass.  Defendant's misrepresentations and

27  omissions were material to Plaintiff and members of the California Statutory Subclass.

28  Plaintiff and members of the California Statutory Subclass would not have purchased

1   and used the Endorsed Tennis Rackets had it not been for Defendant's

2   misrepresentations and concealment of material facts.  Plaintiff and members of the

3   California Statutory Subclass have suffered injury in fact and have lost money as a result

4   of Defendant's fraudulent conduct.

5        65.    Defendant's misrepresentations and omissions alleged herein are

6   objectively material to the reasonable consumer, and they were material to Plaintiff.

7   Reliance upon the misrepresentations and omissions discussed herein may therefore be

8   presumed as a matter of law.  The materiality of such representations and omissions also

9   establishes causation between Defendant's conduct and the injuries suffered by Plaintiff

10  and the members of the California Statutory Subclass.

11       66.    Defendant has engaged in unlawful, unfair, and fraudulent business acts

12  entitling Plaintiff and members of the California Statutory Subclass to judgment and

13  equitable relief against Defendant, as set forth in the Prayer for Relief.

14       67.    Additionally, under Business and Professions Code section 17203, Plaintiff

15  and members of the California Statutory Subclass seek an order requiring Defendant to

16  immediately cease such acts of unlawful, unfair, and fraudulent business practices, and

17  requiring Defendant to correct its actions.

18                        **THIRD CAUSE OF ACTION**

19              ***Brought on Behalf of the California Statutory Subclass***
            **Violation of the California False Advertising Law**

20        **(California Business & Professions Code §§ 17500 *et seq.*)**

21       68.    Plaintiff incorporates by reference in this cause of action each and every

22  allegation of the preceding paragraphs, with the same force and effect as though fully set

23  forth herein.

24       69.    Plaintiff brings this cause of action on behalf of herself and the members of

25  the California Statutory Subclass.

26       70.    California Business and Professions Code section 17500 prohibits "unfair,

27  deceptive, untrue or misleading advertising."

28

15

71.     Defendant violated California Business and Professions Code section 17500 by, *inter alia,* (a) misleadingly advertising that top professional tennis players such as Andy Murray use Head's Endorsed Tennis Rackets on the professional tours; (b) painting the tennis rackets that these top professional players actually play with during competition to look like the newest models Head sells to consumers; and (c) concealing material information about the Endorsed Tennis Rackets, in that these top professional players do not actually use the tennis rackets they are paid to endorse at the time of their endorsement.

72.     Defendant's deceptive practices were specifically designed to induce Plaintiff and other members of the California Statutory Subclass to purchase the Endorsed Tennis Rackets over those of its competitors or other Head models that were not as expensive.  Defendant's practices were carried out through paint jobs on the Head Tennis Rackets in order to induce Plaintiff and other members of the California Statutory Subclass to purchase Head's Endorsed Tennis Rackets.

73.     Plaintiff and other members of the California Statutory Subclass would not have purchased and consumed Head's Endorsed Tennis Rackets had it not been for Defendant's misrepresentations and concealment of material facts.  Plaintiff and other members of the California Statutory Subclass were denied the benefit of the bargain when they decided to purchase Head's Endorsed Tennis Rackets over competitor products or other Head products, which are less expensive or do not unlawfully claim to be used by top ranked professional tennis players such as Andy Murray during competitive play on the professional tours.  Had Plaintiff and other members of the California Statutory Subclass been aware of Defendant's false and misleading advertising tactics, they would not have purchased Head's Endorsed Tennis Rackets.

74.     The content of Head's representations concerning the Endorsed Tennis Rackets, as alleged herein, were of a nature likely to deceive reasonable consumers.

75.     Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and reliance upon such

1  misrepresentations and omissions may therefore be presumed as a matter of law.  The

2  materiality of such representations and omissions also establishes causation between

3  Defendant's conduct and Plaintiff's and the California Statutory Subclass members'

4  injuries.

5  76.  Unless restrained by this Court, Defendant will continue to engage in

6  misleading advertising, as alleged above, in violation of California Business and

7  Professions Code section 17500.

8  77.  As a result of the foregoing, Plaintiff and members of the California

9  Statutory Subclass have been injured in fact and lost money or property, and they are

10  entitled to restitution and injunctive relief.

11

12  **FOURTH CAUSE OF ACTION**
*Brought on Behalf of the Nationwide Subclass*
**Fraud**

13

14  78.  Plaintiff incorporates by reference in this cause of action each and every

15  allegation of the preceding paragraphs, with the same force and effect as though fully set

16  forth herein.

17  79.  Plaintiff brings this cause of action on behalf of himself and the other

18  members of the Nationwide Subclass.

19  80.  Upon information and belief, Defendant, through the years from at least

20  January 1, 2006, directly or through its agents and employees, made false

21  representations, concealments, and nondisclosures to Plaintiff and members of the

22  Nationwide Subclass.  For example only, on April 2, 2013, Defendant issued a press

23  release representing that "Murray was winning a thrilling match with his HEAD

24  YouTek IG Radical, saving a match point in the 12th game of the final set for a 2-6, 6-4,

25  7-6 (1) defeat of Spain's David Ferrer . . . Richard Gasquet, playing with his HEAD

26  YouTek IG Extreme, was beaten in a three set battle 7-6(3), 1-6, 2-6 by the later winner

27  Andy Murray.  In the second semifinal HEAD Racquet Rebel Tommy Haas (HEAD

28  YouTek IG Prestiege) was defeated 6-4, 2-6, 3-6 by the finalist David Ferrer . . . In the

1   women's draw, Maria Sharapova, who swings her new HEAD YouTek Graphene
2   Instinct, reached the final just two weeks after her triumph in Indian Wells."

3       81.    Upon information and belief, Defendant's statements were false.  Contrary
4   to Defendant's statements, upon information and belief, Andy Murray did not play with
5   the new-model YouTek IG Radical, Richard Gasquet did not play with the new-model
6   YouTek IG Extreme, and Maria Sharapova did not play with a new-model YouTek
7   Graphene Instinct identified in the press releases.  Rather, upon information and belief,
8   in each case these top-ranked tour professionals were playing with either an older-model
9   racket, a different model racket, or a racket that was customized and not available for
10   purchase by the general public, that was disguised to look like the new-model Head
11   racket endorsed by these and other professional tennis players.  Further, after providing
12   disguised rackets to these top ranked tour professionals and issuing the above press
13   releases, Defendant failed to disclose the true facts.

14       82.    When Defendant made the representations described herein, it knew that
15   the representations were false.  It made these representations with the intention to induce
16   consumers to purchase the Endorsed Tennis Rackets, believing that these top ranked
17   professional tennis players really played with these model rackets.  Further, Defendant
18   knew that its concealment of the true facts about the rackets used by these top ranked
19   tennis professionals was likely to mislead consumers into believing that they actually
20   used the new Endorsed Tennis Rackets.

21       83.    Plaintiff and other members of the Nationwide Subclass relied upon these
22   false representations, concealments, and nondisclosures by Defendant when purchasing
23   these Endorsed Tennis Rackets at issue herein, which reliance was justified.

24       84.    As a result of Defendant's wrongful conduct, Plaintiff and other members
25   of the Nationwide Subclass have suffered and continue to suffer economic losses and
26   other general and specific damages, including but not limited to the amounts paid for the
27   Endorsed Tennis Rackets, and any interest that would have been accrued on those
28   monies, all in an amount to be determined according to proof at time of trial.

85.   The aforementioned conduct of Defendant was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendant, and was despicable conduct that subjected Plaintiff and other members of the Nationwide Subclass to a cruel and unjust hardship in conscious disregard of their rights, thereby justifying an award of punitive damages against Defendant.

### FIFTH CAUSE OF ACTION
*Brought on Behalf of the Nationwide Subclass*
**Negligent Misrepresentation**

86.   Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

87.   Plaintiff brings this cause of action on behalf of herself and the other members of the Nationwide Subclass.

88.   Upon information and belief, Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff and members of the Nationwide Subclass.  For example only, on April 2, 2013, Defendant issued a press release representing that "Murray was winning a thrilling match with his HEAD YouTek IG Radical, saving a match point in the 12th game of the final set for a 2-6, 6-4, 7-6 (1) defeat of Spain's David Ferrer . . . Richard Gasquet, playing with his HEAD YouTek IG Extreme, was beaten in a three set battle 7-6(3), 1-6, 2-6 by the later winner Andy Murray.  In the second semifinal HEAD Racquet Rebel Tommy Haas (HEAD YouTek IG Prestiege) was defeated 6-4, 2-6, 3-6 by the finalist David Ferrer . . . In the women's draw, Maria Sharapova, who swings her new HEAD YouTek Graphene Instinct, reached the final just two weeks after her triumph in Indian Wells."

89.   Upon information and belief, Defendant's statements were false.  Contrary to Defendant's statements, upon information and belief, these top ranked professional tennis players did not play with the new-model Head rackets identified in the press

releases.  Rather, upon information and belief, in each case these top ranked professional tennis players were playing with either an older-model or different model racket, or a custom-made racket that was not available for purchase by the general public,  that was disguised to look like the new-model Head racket.  Further, upon information and belief, after providing disguised rackets and issuing the above press releases, Defendant failed to disclose the true facts.

90.   In making the representations of fact to Plaintiff and members of the Nationwide Subclass described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above.  The direct and proximate cause of said failure to disclose was the negligence and carelessness of Defendant.

91.   In making the representations and omissions, and in doing the acts alleged above, Defendant acted without any reasonable grounds for believing the representations were true, and intended by said representations and omissions to induce the reliance of Plaintiff and other members of the Nationwide Subclass.

92.   Plaintiff and other members of the Nationwide Subclass relied upon these false representations, concealments, and nondisclosures by Defendant when purchasing the Endorsed Tennis Rackets at issue herein, which reliance was justified.

93.   As a result of Defendant's wrongful conduct, Plaintiff and other members of the Nationwide Subclass have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Endorsed Tennis Rackets, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

### SIXTH CAUSE OF ACTION
*Brought on Behalf of the Nationwide Subclass*
**Breach of Express Warranty**

94.   Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

95.     Plaintiff brings this cause of action on behalf of himself and the other members of the Nationwide Subclass.

96.     Plaintiff, and each member of the Nationwide Subclass, formed a contract with Defendant at the time that Plaintiff and each member of the Nationwide Subclass purchased an Endorsed Tennis Racket.  The terms of that contract include the promises and affirmations of fact that the Endorsed Tennis Rackets were used by top ranked professional tennis players who were paid by Head to endorse certain models of its latest product line in competitive play, as represented by Defendant in its press releases and other marketing materials.  Defendant's press releases and other marketing materials contain an express warranty, which became part of the basis of the bargain, and is part of a standardized contract between Defendant on the one hand, and Plaintiff and each member of the Nationwide Subclass on the other hand.

97.     Plaintiff and other members of the Nationwide Subclass relied upon the express warranty made by Defendant when purchasing an Endorsed Tennis Rackets at issue herein, which reliance was justified.

98.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Nationwide Subclass.

99.     Despite express warranties that the Endorsed Tennis Rackets were used by these top ranked professional tennis players in tournament play, the Endorsed Tennis Rackets have not been used by them in tournament play.

100.    Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the members of the Nationwide Subclass by not providing the model tennis rackets that were actually used by these top ranked tour professional tennis players in tournament play.

101.    As a result of Defendant's breach of express warranty, Plaintiff and members of the Nationwide Subclass were harmed in the amount of the purchase price that they paid for an Endorsed Tennis Racket.

### SEVENTH CAUSE OF ACTION
*Brought on Behalf of the Nationwide Subclass*
### Unjust Enrichment

102.   Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

103.   By its wrongful acts and omissions for the Endorsed Tennis Rackets, as discussed above, with false and materially misleading claims, Defendant was unjustly enriched at the expense of Plaintiff and members of the Nationwide Subclass, who did not receive the goods to which they were entitled — as discussed in detail above — for the payments made to Defendant, and thus, Plaintiff and members of the Nationwide Subclass were unjustly deprived.

104.   It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation it obtained from its deceptive misleading, and unlawful conduct alleged herein.

105.   Plaintiff and members of the Nationwide Subclass seek restitution from Defendant, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

### PRAYER FOR RELIEF

Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment against Defendant, as follows:

1.   Certifying the Class, including the California Statutory Subclass and the Nationwide Subclass, as requested herein, certifying Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as counsel for the Class;

2.   Ordering that Defendant is financially responsible for notifying all members of the Class of the alleged misrepresentations and omissions discussed herein;

CLASS ACTION COMPLAINT

3.      Awarding Plaintiff and the members of the Class compensatory and punitive damages in an amount according to proof at trial;

4.      Awarding restitution and disgorgement of Defendant's revenues and/or profits to Plaintiff and members of the Class;

5.      Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, including prohibiting Defendant from asserting false claims concerning the actual tennis rackets that professional tennis players play with during competition; prohibiting Defendant from painting or otherwise modifying the tennis rackets that professional tennis players actually play with to resemble the newest models Head sells to consumers; prohibiting Defendant from concealing material information about the Endorsed Tennis Rackets, and; compelling Defendant to inform the general public, through publications and other media generally used by Defendant to advertise the sale of the Endorsed Rackets, of these fraudulent past practices and to engage in corrective marketing.

6.      Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

7.      Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

8.      For such other and further relief as the Court deems just and proper.

CLASS ACTION COMPLAINT

Dated:  June 11, 2013

BARON & BUDD, P.C.
Daniel Alberstone
Roland Tellis
Peter Smith
Mark Pifko

By:

Daniel Alberstone
Attorneys for Plaintiff
RUSSELL MINORU ONO,
individually and on behalf of other
members of the general public similarly
situated

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of their claims by jury to the extent authorized by law.

Dated:  June 11, 2013                    BARON & BUDD, P.C.
                                         Daniel Alberstone
                                         Roland Tellis
                                         Peter Smith
                                         Mark Pifko


                                By: _____
                                         Daniel Alberstone
                                         Attorneys for Plaintiff
                                         RUSSELL MINORU ONO,
                                         individually and on behalf of other
                                         members of the general public similarly
                                         situated

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV13- 4222 PA (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

RUSSELL MINORU ONO, individually and on behalf of other members of the general public

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

HEAD RACQUET SPORTS USA, a corporation organized and existing under the laws of the State of Delaware

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Daniel Alberstone (SBN 105275) Roland Tellis (SBN 186269)
Peter F. Smith (SBN 203224) Mark Pifko (SBN 228412)
BARON & BUDD, P.C.
15910 Ventura Blvd., #1600, Encino, CA 91436; Ph: 818.839.2333/Fax: 818.986.9698

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** excess of $5,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Consumers Legal Remedies Act (Cal. Civ. Code sections 1750 et seq.); Violation of Unfair Competition Law (Cal. Bus. & Prof. Code sections 17200 et seq.) and Violation of False Advertising Law (Cal. Bus. & Prof. Code sections 17500 et seq.); Class Action Fairness Act (28 U.S.C. section 1332)

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Matters | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:** CV13-04222

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

CV-71 (02/13)                      CIVIL COVER SHEET                      Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: June 11, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |