Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Evan Zucker (SBN 266702)
ezucker@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

Attorneys for Plaintiff
RUSSELL MINORU ONO individually,
and on behalf of other members of
the public similarly situated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| RUSSELL MINORU ONO, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEAD RACQUET SPORTS USA, a corporation organized and existing under the laws of the State of Delaware, and HEAD USA, INC., a corporation organized and existing under the laws of the State of Delaware,<br><br>Defendants. | Case No.: 2:13-cv-04222-FMO(AGRx)<br>**CLASS ACTION**<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>District Judge: Hon. Fernando M. Olguin<br>Magistrate: Hon. Alicia G. Rosenberg<br><br>Date: August 13, 2015<br>Time: 10:00 a.m.<br>Location: Courtroom 22 – 5th Floor<br>312 North Spring Street<br>Los Angeles, CA 90012-4701<br><br>Action Filed: June 12, 2013 |

**PUBLIC VERSION – CONTAINS REDACTIONS**

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. DISCUSSION ..... 2

A. Evidence Indisputably Establishes that Class Members Were Exposed to Head's Uniform Player-Centric Message and it Was Material to them ..... 2

i. Head's Conduct Confirms that the Message at Issue Was Material ..... 2

ii. Head's Surveys Fail to Show that the Message Was Not Material ..... 4

a. Head's Biased Litigation Survey Has No Value ..... 4

b. Tennis Industry Surveys Do Not Support Head's Position ..... 6

iii. Class Members' Exposure to Head's Uniform Message Is Obvious ..... 7

B. Plaintiff's Damages Analysis Is Appropriate ..... 9

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**CASE** | **PAGE(S)**

*Comcast Corp v. Behrend*,
133 S.Ct. 1426 (2013)....................9

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013)....................2

*Kramer v. Wilson Sporting Goods, Co., et al.*,
Case No. 2:13-cv-06330-JFW(SHx), Dkt. 60 (C.D. Cal. Mar. 21, 2014)...............8, 9, 10

*Kwikset Corp. v. Super. Ct.*,
51 Cal.4th 310 (2011)....................2

*Lavie v. Proctor & Gamble Co.*,
105 Cal.App.4th 496 (2003)....................5, 7

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
282 U.S. 555 (1931)....................9

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
2014 WL 572365 (C.D. Cal. Feb. 3, 2014)....................9

## I. INTRODUCTION

The undisputable fact in this case is that for at least twenty five years, Defendants Head Racquet Sports USA and Head USA, Inc. ("Head") lied to consumers. Head does not, and cannot, deny this fact -- [REDACTED] Instead, Head now contends that consumers either were not aware of its lies, or, if they were, they did not care. But, neither the evidence, nor common sense supports Head's position. [REDACTED] Similarly, Head cannot explain why it paints custom racquets used by Head's Paid Professionals to look like the latest off-the-shelf Tour Line Racquets. If Head's player-centric campaign and racquet painting were not effective in generating sales, why would Head go to such great lengths to deceive customers?

Because Head cannot answer these questions, Head hopes to skirt liability by defeating class certification. However, in opposing certification, Head proffers irrelevant and misleading surveys, ignores the testimony of its corporate representatives, and disregards numerous damaging internal emails. Head's litigation-derived attempts to explain away the company's deceptive message to its target audience are not credible. Try as it might, Head cannot escape the fact that through its player-centric campaign, it consistently communicated to consumers that Head's Paid Professionals use the Tour Line Racquets, when in fact, they do not. [REDACTED] In the end, based on the evidence, Head cannot genuinely dispute that class certification is appropriate. Indeed, nothing in Head's opposition papers suggests otherwise.

## II. DISCUSSION

### A. Evidence Indisputably Establishes that Class Members Were Exposed to Head's Uniform Player-Centric Message and it Was Material to them

#### i. Head's Conduct Confirms that the Message at Issue Was Material

Using incontrovertible admissions from Head's President, Head's marketing materials, and expert testimony, Plaintiff's portion of the Joint Brief firmly establishes that Head communicated a uniform message to consumers linking Head's Paid Professionals to the Tour Line Racquets (*i.e.*, the player-centric campaign). (*See*, *e.g.*, Joint Brief re: Class Certification ("Joint Brief") at 2-4.) Head responds by arguing that consumers do not care if Head's Paid Professionals use the Tour Line Racquets in competition. (*Id*. at 41:24-26.) But, Head's saying so does not make it true -- the evidence shows otherwise.

[REDACTED] Head's argument fails because it misstates Plaintiff's position and reflects a fundamental misunderstanding of the law. Materiality is established if "'***the maker of the representation*** knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 333 (2011)).[1] [REDACTED] Under applicable law, if Head believes its message is important to consumers, the message is material. Regardless of the findings of consumer surveys or other circumstantial information created for litigation, common sense dictates that Head has not stayed in business disseminating meaningless messages to consumers.

[REDACTED]

[1] All emphasis added unless otherwise indicated.

[redacted]

Moreover, not only did Head uniformly deceive the public by virtue of these "paintjobs," but by also falsely claiming the racquets Head's Paid Professionals "use" have unique characteristics that fit their style of play. [redacted]

[redacted] In short, there is no legitimate reason to paint Head's Paid Professionals' racquets to look like off-the-shelf Tour Line Racquets and then, falsely claim that the racquet has the characteristics of the linked player. Head only does it because it is a successful technique to reach consumers and increase racquet sales.

**ii. Head's Surveys Fail to Show that the Message Was Not Material**

**a. Head's Biased Litigation Survey Has No Value**

[redacted] Head's biased survey, however, is so fatally flawed that it is of no value in this litigation, and in asking this Court to rely on it, Head invites the Court to commit judicial error. Specifically, (a) Poret's survey sampled the wrong universe of consumers; (b) the sample chosen by Poret was not representative of that population; (c) the data Poret gathered was not accurately reported, and; (d) the questions he asked were unclear and misleading. (PSA at 001222-23 (Declaration of David W. Stewart ("Stewart Decl.") at ¶¶ 16-18).) Because the results are unreliable and entirely irrelevant, the Court should give the Poret Survey no weight.

Critical to the analysis of the Poret survey is the requirement that as discussed in Plaintiff's portion of the Joint Brief, "[w]here the advertising or practice is targeted to a particular group or type of consumers, either more sophisticated or less sophisticated than the ordinary consumer, the question whether it is misleading to the public will be viewed from the vantage point of members of the ***targeted group***, not others to whom it is ***not*** primarily directed." *Lavie v. Proctor & Gamble Co*., 105 Cal.App.4th 496, 512 (2003). [redacted]

Moreover, Poret's survey is irrelevant because he asked respondents the wrong questions. [redacted]

Finally, as explained by Mr. Sanders, it is well known in the advertising industry that consumer choice surveys like Poret's survey are unable to adequately capture purchasing rationale. Sanders explained that for some purchases, consumers might base their decision on what their friends will think, but consumers are unlikely to ever admit that on a survey. (PSA at 001159-61 (Sanders Depo. at 98:22-100:18).)

**b. Tennis Industry Surveys Do Not Support Head's Position**

[redacted]

**iii. Class Members' Exposure to Head's Uniform Message Is Obvious**

Head also argues that class certification is inappropriate because putative class members were not exposed to the player-centric message at issue. (Joint Brief at 43-44.) Again, Head's argument is belied by common sense and the evidence. As discussed above, the message must "viewed from the vantage point of members of the ***targeted group***, not others to whom it is ***not*** primarily directed." *Lavie*, 105 Cal.App.4th at 512. [redacted]

[redacted]

[redacted]

[redacted]

---

[2] [redacted]

Similarly, Head does not dispute that its press releases falsely claim that Head's Paid Professionals use Tour Line Racquets in professional play. (*See* APPX. at 000089-99 (exemplar press releases.) Instead, Head argues the releases have "very limited public exposure." (Joint Brief at 17:15-16.)

Head also relies on an order from Judge Walter denying certification in the *Kramer v. Wilson Sporting Goods, Co., et al.*, Case No. 2:13-cv-06330-JFW(SHx), Dkt. 60 (C.D. Cal. Mar. 21, 2014). However, critical to Judge Walter's conclusion was his finding that, ***unlike the facts here***, "Wilson conducted a ***limited and small-scale advertising campaign***," and as a result, there was "***no evidence*** demonstrating" class members' exposure to the deceptive business practices.

Head's Tour Consumers were exposed to Head's player-centric campaign through a variety of sources, (1) watching professional tennis either live or on TV; (2) Head's print advertising; (3) republication of Head's press releases;

[redacted]

**B. Plaintiff's Damages Analysis Is Appropriate**

*Comcast Corp v. Behrend*, 133 S.Ct. 1426, 1433 (2013) held that a plaintiff must present a ***methodology*** to calculate damages as a result of the alleged wrong. Here, with the Declaration of Colin B. Weir, Plaintiff indisputably does that. (*See* APPX. at 000240-250 (Declaration of Colin B. Weir).) Moreover, "it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931) (cited by *Comcast*, 133 S.Ct. at 1433); *see also*, *Vaccarino v. Midland Nat'l Life Ins. Co.* , 2014 WL 572365, at *10-13 (C.D. Cal. Feb. 3, 2014) ("*Comcast* requires that courts determine whether damages are susceptible of classwide measurement, ***not*** whether that measurement is ***precisely correct***.") In this case, Plaintiff contends that Head, through its player-centric campaign, uniformly misrepresented that its Tour Line Racquets were used by Head's Paid Professionals in competition, when in fact, they were not. Consumers were damaged because but for Head's misrepresentation, they would not have purchased Tour Line Racquets. Alternatively, consumers are entitled to the benefit of the bargain because they did not receive what Head agreed to provide.[3]

[redacted]

[3] Head's contention that the benefit-of-the-bargain model is "irrelevant" because common law claims were not pled on behalf of the California class is nonsensical. Plaintiff is a member of the Nationwide Class and may amend the Class definition and establish sub-classes, including limiting nationwide claims to California residents. (*See* FAC ¶¶ 42-45.)

[redacted]

In its opposition, Head presents a straw man argument by criticizing a price premium model which is not part of Weir's methodology. (*See* Joint Brief at 48:2-18.) Additionally, Head relies on the report of W. Todd Schoettelkotte to attack Weir's report. But, Schoettelkotte's analysis is based on Poret's conclusion that a wide variety of factors influence consumer choice. (APPX. at 000680-683 (Schottelkotte Decl. at ¶¶ 11-17) As discussed above, Poret's survey is fatally flawed. (*See* PSA at 001070-81 (Stewart Decl.).) Therefore, because Schoettelkotte relies on that data, his report is equally flawed and has no value. Similarly, he relies on the evidentiary record from the *Kramer* case to make conclusions here, without considering the differences in class definition, the evidence presented, and the factual records. (APPX. at 000684 (Schoettelkotte at ¶ 20) (quoting *Kramer* to support his opinion).) It makes no difference whether there are numerous material reasons why consumers consider purchasing Tour Line Racquets. What is important is whether consumers would even *consider* the purchase if they knew Head lied to them about their player idols. For purposes of this Motion, Plaintiff has established that they would not. Moreover, as Weir explains in his Rebuttal Declaration, Schoettelkotte's opinion is not based on any flaw in the damages models presented by Weir, but rather on an argument that there should not be liability in the first place. (PSA at 001235-42 (Rebuttal Declaration of Colin B. Weir ("Weir Rebut. Decl.") at ¶¶ 8-10, 22-30).) Such an attack is irrelevant with respect to damages, where one must assume liability.

## III. CONCLUSION

For the reasons stated above and in the Joint Brief, Plaintiff respectfully submits his claims should be certified for class treatment.

Dated: July 30, 2015

BARON & BUDD, P.C.

By: /s/ Mark Pifko
Mark Pifko

Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Evan Zucker (SBN 266702)
ezucker@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436

Attorneys for Plaintiff
RUSSELL MINORU ONO,
individually, and on behalf of all
others similarly situated

11 Case No.: 2:13-cv-04222-FMO(AGRx)
PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION